# KANKAKEE DRAINAGE DISTRICT
## v.
# THE COMMISSIONERS OF LAKE FORK SPECIAL DRAIN-
## AGE DISTRICT.

*Drainage—Statutes—Connection of Different Systems—Action of Lower against Upper District—Statute of Limitations—Plea in Abatement—Damages—Evidence—Instructions.*

1. Where a ditch of an upper drainage district connects with that of a lower district, the cost of necessary enlargement, together with a fair proportion of the original cost of the lower ditch, is a corporate expense of the upper district, which should be apportioned by the commissioners thereof among the lands benefited according to benefits.

2. In an action by a lower against an upper drainage district to recover the cost of the enlargement of the plaintiff's ditch and a fair proportion of the original cost, the question as to the cost of the defendant's ditch is immaterial.

3. A plea in abatement by a corporation aggregate must purport to be by its attorney.

4. It is proper to overrule a motion to quash a summons where no reason is assigned therefor and no proof offered in support thereof.

5. After the court has sustained a demurrer to a plea of the statute of limitations, it is proper to refuse an instruction based on that defense.

[Opinion filed May 25, 1888.]

APPEAL from the Circuit Court of Piatt County; the Hon. J. F. HUGHES, Judge, presiding.

Mr. WILLIAM B. WEBBER, for appellant.

Messrs. S. R. REED, H. H. CREA and W. E. LODGE, for appellees.

CONGER, P. J. This was an action brought under the 42d section of the drainage act of 1885 by appellee against appellant in the Piatt Circuit Court. The appellant district was organized under the drainage laws of May 16, 1879, in the

Champaign County Court and the appellee district in the Piatt County Court, under the drainage. law approved May 29, 1879, and the several amendments thereto.   The Kankakee district was the upper, and the Lake Fork the lower district; *i. e.*, as the ditches of the two districts were finally constructed, the water from the Kankakee district flowed into and through the ditches of the Lake Fork or lower district.

The ditches in both districts had been laid out and partially constructed prior to July 1, 1885, but it was after that when the ditch of the Kankakee district was connected with that of the Lake Fork district, and therefore we are of opinion that the present drainage law, in force July 1, 1885, governs the rights of the parties in this action.

The declaration contained two counts.   The first alleged that a ditch had been constructed by the Lake Fork district of sufficient capacity to carry off all the waters that would fall upon such district—to properly drain all its lands—and also to carry off all water that would naturally flow into said district from lands above the same; that on the 12th day of July, 1885, the Kankakee district connected its ditch with the upper end of the Lake Fork ditch, so that a much larger quantity of water was caused to flow into the latter ditch than would naturally flow into the same, rendering it necessary to enlarge the lower ditch, which was done at great expense, etc., and that it was the duty of the Kankakee district to pay such cost of enlargement.

The second count declares for the amount of money the lands within the Kankakee district would have been chargeable with toward the construction of the Lake Fork ditch if such lands had been originally in the Lake Fork district.

To this declaration a plea in abatement to the jurisdiction of the court was filed reciting that the commissioners (naming them) in their own proper persons come and defend, etc. A demurrer was sustained to this plea, and appellant filed an amended plea of the same character, but purporting to be by them as commissioners.   To this amended plea a demurrer was also sustained, and we think rightly.   A plea in abatement by a corporation aggregate must purport to be by their

attorney. Nixon, Ellison & Co. v. S. W. Ins. Co., 47 Ill. 444; Nispel v. W. U. R. R. Co., 64 Ill. 311.

The appellant next entered its motion to quash the summons, which was overruled. This, we think, was proper, as there was nothing shown in support of the motion that the issuance and service of the summons was forbidden by the statute; for aught that appears upon the face of the motion, or the summons, appellant's commissioners may have been residents of Piatt County, although served in Champaign. The ruling of the court was no violation of the principle enunciated in Safford v. Sangamon Ins. Co., 88 Ill. 296.

Appellant then filed pleas of not guilty, upon which issue was joined, and a plea of the statute of limitations, to which a demurrer was sustained by the court. No error being assigned upon the court's action in sustaining the demurrer, we can not notice the error assigned upon the refusal of the court to instruct the jury upon the statute of limitations. There being no plea of the statute of limitation before the jury, it would have been improper for the court to have given an instruction upon the subject.

Upon trial, verdict was for appellee in the sum of $8,000· A *remittitur* was entered for $4,000, and judgment rendered for $4,000.

Sec. 42 of the drainage act of 1885 provided: "And the owners of land outside the drainage district, or another drainage district, may connect with the ditches of the district already made, by the payment of such amount as they would have been assessed if originally included in the district; or if such connection shall, by increase of water, require an enlargement of the district ditches, then the outside owners of land so connecting, or other drainage district, as may be, shall pay the cost of such enlargement. If individual land owners outside the district have or shall so connect, they shall be deemed to have voluntarily applied to be included in the district, and their lands benefited by such drainage shall be treated, classified and taxed like other lands within the district."

The principal objections to the merits, as urged by counsel for appellant, if we understand them properly, are as follows:

First, because evidence was admitted tending to show what amount would have been assessed upon the Kankakee district, or the lands embraced within it, in the aggregate, toward the construction of the Lake Fork district ditch, had the former district been originally included in the latter, instead of a classification of the lands by which the burden to be imposed upon each tract should be first ascertained and charged against it separately, according to the benefits received. If this were the true construction of this section, it is apparent it could not be enforced. The commissioners of Lake Fork district clearly have no authority to classify or assess the lands in the Kankakee district at any time.

The commissioners of the Kankakee district can not do so until the amount necessary to be contributed to the Lake Fork district ditch is ascertained in some legal way. It may be that the commissioners of the two districts could mutually agree upon this amount, but if they fail to do this, we think the proper method of arriving at it would be by suit, in which the amount the upper district, as a whole, should contribute to the lower for the use of the latter's ditch, when no enlargement is required, could be determined, and then such amount should be apportioned by the commissioners of the upper district upon the lands of such district according to benefits, in accordance with the principles of apportionment laid down in the drainage law.

This view, we think, is supported by the language of the clause—"If *individual land owners* * * * shall so connect * * * their lands benefited by such drainage shall be treated, classified and taxed like other lands within the district." This clause, by express words, confines lands that are to be classified and taxed as other lands within the district, to *individual* land owners, making no express provision in reference to the manner in which other districts shall raise the amount required of them.

If the ditch of the lower district has to be enlarged to accommodate the waters from the upper district, the cost of such enlargement should also be borne by the upper district. And this amount, together with its fair proportion of the

original cost of the lower ditch, is a corporate expense, to be borne by the upper district like other corporate burdens, and to be apportioned among the lands embraced in the district, according to benefits, by its own commissioners.

Second.    It is objected that on the trial the cost of the ditch in the Kankakee district was not considered.    We can not understand why this question should have any bearing upon the issue tried.   The trial was for the purpose of determining the fair and equitable proportion of the original cost of the Lake Fork ditch to be borne by the Kankakee district, as well as the cost of enlarging it to carry the additional water flowing into it from the latter district.

An inquiry into the cost of the ditches in the Kankakee district would throw no light on the issue tried.

The law, as held by the court below, being in substantial compliance with the views herein expressed, the judgment of the court will be affirmed.

*Judgment affirmed.*